FRESH vs. MILLION.

1. A. to secure a debt due to B. executed a deed conveying certain lands in trust to C. C. died leaving heirs. In a bill filed to have a new trustee appointed, and the land sold to satisfy the trust, the heirs of C. are necessary parties.

Fresh vs. Million.

2. The deed of trust being given, upon a condition and consideration not expressed in the deed, on a bill filed to have a trustee appointed, and the land sold, a court of equity will require the complainant to do equity, and if he have refused to comply with the condition upon which the deed was executed, equity will not lend its aid to enforce his rights.

APPEAL from Ralls.

Glover & Campbell, for Appellant.

POINTS AND AUTHORITIES.

1. By the death of Samuel Allen, the lands conveyed to him descended upon his heirs, and they were necessary parties to the complainant's bill. If so, no decree could lawfully be entered for the sale of said land until all of said heirs were before the court, and the same reasons demand that Glover & Anderson, the subsequent mortgagees, should have been made parties; 1 Tucker's Com. part 2, p. 130; 6 John. Ch. R. 450; 1 Ib. 350; 2 Tucker, 496; 4 John. R. 606; 7 Monroe, 496. The decree must be reversed for want of parties, 2 Dana, 388; 1 Dana, 594; 6 Mon. 43.

2. The record shows there were two guardians in the case for the infant heirs of Samuel Allen, deceased: William Holmes and James S. Green. If Holmes is to be regarded as the guardian, then there is error, because there was no order taking the bill for confessed against said Holmes *as guardian*; and if Green is to be considered guardian, the objection is that he was appointed by the court, and without process served upon said infant defendants, so there is error in either view of the subject. 5 Dana, 584; 3 Dana, 216; Ib. 405, 300; 1 Tucker, 2 part 106; Story Eq. Pl. 189; 5 J. J. Marshall, 49.

3. The conduct of Million in procuring Fresh to execute the deed to him, by the promise of releasing him as security to Samuel Allen, and his refusal to do so afterwards, was iniquitous and oppressive; and when he comes into a court of equity seeking relief, he will be required to do equity, or his bill will be dismissed; 22 Pickering, 312; 1 Brown Ch. C. 546; 2 J. J. Marshall, 405; 1 Marsh. 210; 3 Bibb, 298; 3 Harris & McH. 327; 3 Monroe 329; 2 Tucker Com. 464; 2 Ib. 395; Fonblanque's Eq. 283, top page; 2 Cowes, 195; 3 Peter's, 219; 1 Vesey, 199; 2 Vernon's R. 602. In the American Chancery Digest, vol. 1, 455, No. 44, it is laid down, that "In a court of equity, fraud includes all acts, omissions and concealments, which involve a breach of either legal or equitable duty, trust or *confidence justly reposed*, and are injurious

to another, or by which an *injurious* or *unconscientious* advantage is taken. Equity considers a parol agreement for the sale of lands, as binding in conscience, and will not decree in opposition to it." 1st American Chy. Dig. 415, No. 15, (citing 1 A. K. Marsh. 437.)

4. The $80 paid in 1836, and the $63 which Million owed to Fresh on account, and which Million contends in his answer was paid to him, should have been credited on the debt of Million. 5 Dana, 81; 7th Mar. 596; 3 Dana, 595. But if these items were not good as payments, most certainly they should have been allowed as off-sets. 3 Monroe, 82; 3 Ib. 87; 2nd Summer, 151; 3 Mason, 140, 145; 2 Cowen, 175; 2 Tucker Com. 395; 2 Pull. Dig. 283, No. 203, citing 5 Mon. 63; Durretts vs. Hook, 8 vol. Mo. Rep. 381. A bill to foreclose a mortgage is a bill for an account, 1 Calvert's Eq. 125; 7 vol. Law Lib.; see Ibidem 211, where a bill for an account is held to be a bill for the execution of a trust.

5. The excessive interest will be deducted of course, according to the Statute; see Revised Code 1835, 334. An agreement for 25 per cent. is not a good agreement for 10 per cent. The agreement for 25 per cent. being void, the case stands as if no interest had been stipulated for. In such case 6 per cent. is regarded as legal, and the excess to be deducted.

### RECAPITULATION.

The appellant insists that the decree of the circuit court must be reversed for want of necessary parties, and because the appellee is not in a condition to ask the aid of a court of equity. But in no event can a decree now be made more unfavorable to him than to allow the following items against the money lent—$80 paid in 1836; $63 the goods sold complainant; and $76 the excessive interest contracted for; in all $219; this deducted from $400 leaves $181, to which the appellee is entitled, unless as argued, the court could deny him relief, till he will do equity touching the alleged fraud practiced upon the appellant.

LEONARD & BAY, for Appellee.

### POINTS AND AUTHORITIES.

*First,* The circuit court did not decide upon the objection of the want of the service of process upon a portion of Allen's heirs, and therefore

that question cannot be raised in this court by Fresh upon his appeal. Chamley vs. Dunsany and others, 2 Schoale & Lefroy, 712; Colden vs. Knickerbocker, 2 Cowen 49; Campbell vs. Starkes, 2 Wendell's R. 143; Sands vs. Hildreth, 12 John. Rep. 490.

*Second,* The alleged conduct of the complainant in procuring the deed, furnishes no ground for refusing to the complainant the relief sought, if he were otherwise entitled to it, because,

1st, The proof does not sustain the allegations in point of fact;

2d, If the facts be as alleged they constitute no equity for the refusal of the circuit court to appoint a new trustee in the room of the one displaced by death. Neilson vs. McDonald, 6 John. C. R. 201.

*Third,* The eighty dollar and the sixty-three dollar payments, were voluntarily made by Fresh in discharge of usurious interest he had agreed to pay; and having been so made, he cannot recover the money or any part back, under our usury laws. Rev. Laws Mo., title, "Interest," § 4, p. 333. Livingston vs. Harris, 3 Paige's Rep. 532.

*Fourth,* The decree of the circuit court was for a less amount than the complainant was entitled to under any view that could be taken of our usury laws, as administered in a court of equity.

1st, A court of equity is not within the meaning of our usury laws, so far as those laws inflict upon the lender the penalty of a forfeiture of all interest and as much of the principal as the premium exceeds lawful interest, and therefore the decree ought to have been for $400 (principal lent, with six per cent. interest from February 1839, (time of the last loan,) to October, 1843, (time of the decree,) in all $514, instead of $324.

2d, If, however, the penalty is to be enforced in all cases whenever a suit is brought, whether at law or in equity, or whether directly on the contract for the repayment of the money, or in equity, to supply some defect in the security given for the money loaned, then the decree ought to have been for $400 less $60, (the excess of $100, the premium exacted over $40 lawful interest,) that is for $340 instead of $324.


NAPTON, J., delivered the opinion of the court.


This was a bill in chancery brought by Daniel A. Million against James Fresh. The bill charges that the defendant James Fresh, was on the 30th day of January, 1838, indebted to the complainant in the sum of five hundred dollars, for which sum he executed his note payable

on the 30th January, 1839; that to secure the payment of said note, said Fresh executed for the benefit of complainant, a deed of trust for a certain tract of land described in the bill, and that one Samuel Allen was made the trustee, with the power of selling said land upon ten days notice, and applying the proceeds to the satisfaction of the debt. That before the money became due, Allen the trustee, died, leaving nine children, five of whom are adults, and four minors; that W. H. Holmes is guardian of said minors, and administrator of the estate of the deceased. The bill further alleges that the money is still unpaid, and prays the appointment of a trustee to carry out the purposes of the trust. The heirs of Allen are made parties defendants.

A summons was issued for the heirs of Samuel Allen, deceased, and the guardian of the minor heirs. This summons was served upon Fresh and some of the adults, two of them being returned not found.

The answer of Fresh admitted the execution of the deed of trust, but denied the extent of indebtedness claimed by Million. The answer states the transaction out of which the deed of trust originated, to have been as follows : In the year 1835, complainant loaned to defendant the sum of $400, upon which sum defendant agreed to pay 20 per cent. interest per annum; defendant then executed his notes to complainant for $400, the principal, and for $80, the amount of usurious interest, each note being payable twelve months after date; that defendant paid the last note when it became due. That after the expiration of the first year, the loan was continued for another year upon the same terms, and an endorsement was made upon the bond to that effect. At the end of the second year defendant executed his note to complainant for $80, the amount of interest agreed upon for the past year, and complainant then insisted on 25 per cent. per annum for the ensuing year. The defendant being pressed for money, acceded to the terms proposed, and executed his bond or note to complainant for $500, which included the original debt of $400, and the interest for one year at 25 per cent.

The defendant further avers in his answer that complainant offered to release him from his liability as security for Samuel Allen, in a note given by said Allen to complainant for $300, if he would give a deed of trust to secure the payment of the said $500; that he executed the deed of trust referred to by complainant upon this consideration; that complainant refused to release him as security for said Allen, but sued defendant on said bond, and compelled him to pay the full amount thereof, said Allen, the principal, being insolvent.

The defendant further stated, that soon after the execution of said bond for $500, complainant, at his own instance, made an endorsement

on the bond, stating, that if the principal sum due, should be paid before the same became due, he would release the usury contained therein, but that complainant knew at the time such endorsement was made that the defendant, on account of pecuniary losses, would be unable to pay the bond when the same should become due.

The defendant then alleges that the complainant is justly indebted to him in the sum of $80 for usurious interest on the loan for $400 paid in 1836, and in the sum of $63 for goods, &c., and prays that these sums may be set off against the lawful demands of the complainant. Defendant insists on the protection of the statute against usury.

Afterwards the defendant filed a cross-bill, in which he prayed that his answer heretofore made, might be considered a cross-bill. To this was appended fourteen interrogatories, relating to the charges of usury contained in the answer.

To this cross-bill complainant demurred, but the demurrer being overruled, complainant filed his answer, in which he admitted the principal facts charged by the defendant in relation to the usury. In relation to the deed of trust, the complainant says : " Defendant further states that for the consideration of the deed of trust, I would release him from the securityship of Samuel Allen. Samuel Allen was then approaching bankruptcy, but I promised if he would give me a deed of trust that was satisfactory, I would release the defendant. Allen learning from me, as I was required to inform him, of the intention of his security, promised to do so at the same time and place, and he appeared there that day, but politely refused to give up land, alleging that he would borrow the money if it cost him 30 per cent. to take in his note, seeming very much affected at the intimation I had presented him from the defendant, though in a polite and friendly manner."

The complainant denied that there was any usury in the note for $500, but stated that the sum of 100, included in the note for $500, was intended as a penalty to induce the defendant to pay the principal.

Upon the hearing the complainant filed as an exhibit in the cause, the note for $500, upon which was an endorsement, by which the complainant agreed to deduct the interest, in case the principal was paid before due.

The deposition of one Barr was read, in which Barr stated, that in a conversation with Million, the complainant, in relation to the transfer of a note due from witness to Allen, to said Million, the complainant said that Allen was not the man he took him to be, that he was not honest; that he, had loaned Allen money, with Fresh as his security, and he had loaned Fresh money with Allen for security ; that he had

agreed to release each security, if they would each confess judgment. Allen had confessed judgment, as complainant informed witness, but had not acted correctly in transferring all his debts; and that he, Allen, knew that he had released his security, and did not care whether he got his debt or not. Fresh, the complainant stated, would not confess judgment, but had given him landed security under the same agreement.

William Fresh, another witness, who was present at the execution of the deed of trust made by Fresh for Million's benefit, stated that after the execution of the deed and bond, Million passed the old note for $400 to Fresh, and Fresh put it into the fire, observing, "now, Allen, we stand each upon our own footing—no longer responsible for each other." Thereupon Million observed, "well, we'll arrange Mr. Allen's business to-morrow."

The circuit court decreed, that so much of the answer and cross-bill of the defendant Fresh, as relates to the mortgage to Anderson and Glover, and so much thereof as seeks to set-off certain debts alleged to be due from said Million to said Fresh, be dismissed, and as to the other matters in the said original bill of complaint, and in said answer and cross-bill contained, the court finds that the actual amount of money loaned by said complainant to said Fresh, and which formed the consideration of the said note of five hundred dollars, was four hundred dollars, and that the remaining one hundred dollars was interest agreed to be paid by said defendant to complainant, and therefore decrees that the sum of seventy-six dollars, the amount of usurious interest on said note, be deducted from the sum of four hundred dollars, leaving a balance of $324, and that the said balance of $324 be paid to complainant, Million, together with the costs of suit, and that so much of the mortgaged land be sold as will raise money enough to pay the same.

The first objection to this decree is the want of service upon two of the heirs of Samuel Allen, deceased, who were necessarily parties to the bill. This objection is conceded to be a substantial one ; but it is insisted in this court, that inasmuch as the objection was not made in the circuit court, it is too late to make it here for the first time, our statute declaring that this court shall only decide upon such points as were decided by the inferior court.

In common law actions, where the defendant objects to any step or proceeding in the cause, previous to the judgment, which proceeding appears upon the face of the record, he must move in arrest of judgment ; and without such motion, the error, if any has been committed, cannot be corrected by the Supreme Court. Davidson vs. Peck, 4 Mo. R. 446. But where the judgment itself is erroneous, as where the ac-

tion is assumpsit, and the judgment *is* in trover, or where the action *is* against an administrator, and the judgment is *de bonis propriis*, such erroneous judgments have been corrected upon writ of error. State of Missouri to the use of Estiss vs. Finney, admr. of McAllister, 9 Mo. R. Such also appears to be the practice of the court of errors of New York. In the case of Palmer vs. Lorillard, the plaintiff who had shipped goods in the vessel of the defendants, brought an action of assumpsit against the ship owners, and averred a loss of the goods by negligence. The jury found a special verdict, that the goods were lost under particular circumstances, detailing them, without any fault or negligence of the defendants. The court entered a judgment upon the special verdict for the plaintiffs. The court of errors reversed this judgment, and held, that admitting that the plaintiffs had a cause of action, yet they could not recover under this declaration, the jury having negatived the negligence of the defendants, which was the *gravamen* of the action. In relation to the want of objection to this judgment, in the inferior court, Chancellor Kent remarks; "Nor do I think that this case comes within the rule that an objection not taken in the court below, cannot be taken here. That rule was only intended to be applied to objections that the party may be deemed by his silence to have waived, and which, when waived, still leave the merits of the case to rest with the judgment. But if the foundation of the action has manifestly failed, we cannot, without shocking the common sense of justice, allow a recovery to stand. Suppose the declaration in this case had been for assault and battery, or for slander, and the jury had found the defendant not guilty, but had further found that the defendant owed the plaintiff on a promissory note, could we have affirmed a judgment for the sum due on the note? This would be too great an absurdity to be endured.

In the case now under consideration, the decree of the court is for the sale of land, and a sale made under the decree, it is obvious would not affect the title of the heirs of Allen, who were not served with process. The tendency of such a proceeding, must be to produce a sacrifice of the property of Fresh. If the objection affected only the rights of the complainants, ineffectual as it might be to convey the whole legal title, and the complainant consented, the case might be different. As it is, if the decree were in other respects correct, we should feel it our duty to send the case back, for the purpose of having all the necessary parties before the court.

But we think the decree is erroneous on the merits. The complainant asks the aid of the court to enforce a lien, which, according to the

statements of the defendant was obtained by fraud or contrivance, or at least upon a consideration which entirely failed. No principle of equity is better settled than that a court of chancery will not interfere to aid a plaintiff under such circumstances. The only question is, whether the defendant has made out his case. The defendant in his answer alleges that this deed of trust was given upon the agreement of the complainant that he would release the defendant from his liability as security for Samuel Allen. This, it is admitted, he never did, but recovered a judgment against Fresh and Allen, and made the whole money out of Fresh. The complainant, though not specially interrogated on this point, volunteers an answer, and this answer, if intelligible at all, is most unsatisfactory and evasive. His language is this: "Samuel Allen was then approaching bankruptcy, but I promised if he would give me a deed of trust that was satisfactory, I would release the defendant." To whom was this promise made—to the defendant or S. Allen? The construction of the sentence would imply it was made to Allen. If so it is no answer at all to the defendant's charge. But if it were intended that the promise was made to the defendant, the inquiry then arises, by whom does the complainant mean that the deed of trust was to be given, by Allen the defendant? The statement of the complainant would seem to intimate that the deed of trust was to be given by Allen. If so, it is a mere evasion of the charge made by the defendant, which is neither admitted nor denied.

The statement of the defendant, uncontradicted as it is by the complainant, is strongly corroborated by the two witnesses whose evidence is detailed in the statement of the case. Barr states that Million complained to him of the dishonesty of Allen, in not transferring to him a debt which Allen owed to the witness, and that he had discharged Fresh from his responsibility for Allen's debt; that Allen and Fresh had each been indebted to him, and each security for the other; that he had agreed to discharge each from this responsibility for the others debt, if each would confess a judgment; that Allen had confessed judgment, and Fresh had executed a deed of trust under the same agreement.

The evidence of William Fresh is also confirmatory of this understanding. This witness was present when the deed of trust was executed, and Fresh distinctly declares in the presence and hearing of the complainant, that he and Allen were no longer responsible for each other. To this, complainant makes no observation, except "that he would attend to Allen's business to-morrow."

From the statements of the parties, and the evidence above detailed we must infer that this deed of trust was obtained under a promise on

the part of the complainant which was never complied with. Will a court of equity lend its aid to the enforcement of a deed so obtained? We think not. The decree of the circuit court is therefore reversed, and this court doth order, adjudge and decree, that the complainant's bill be dismissed.